IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Daniel Proctor,                          )
                                         )
                Petitioner,              )    No. 06 C 2794
                                         )
        v.                               )    Judge Mark Filip
                                         )
Steven Wright, Warden,                   )
                                         )
                Respondent.[1]           )

## MEMORANDUM OPINION AND ORDER
## DISMISSING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, Daniel Proctor ("Petitioner" or "Proctor"), has filed a petition for a writ of

habeas corpus (also, "Petition") against Respondent, Steven Wright, who presently serves as

Warden of the Hill Correctional Center in Galesburg, Illinois ("Respondent"). Respondent,

through the Illinois Attorney General, has filed a motion to dismiss the Petition as time-barred.

For the reasons discussed below, Respondent's motion is granted and the habeas petition is

respectfully dismissed.

## I.    Background

Petitioner is imprisoned pursuant to a judgment of the Illinois courts. That judgment

followed Petitioner's guilty pleas in the Circuit Court of Cook County to various counts of

aggravated criminal sexual assault in the course of a felony and aggravated criminal sexual

---

[1] Petitioner originally named Frank Shaw as Respondent, as Mr. Shaw was then Warden of Hill Correctional Center, where Petitioner is serving his sentence. Since the petition was filed, Mr. Wright has assumed duties as warden. Accordingly, the Court substitutes Mr. Wright as the proper party respondent. *See, e.g.*, Rule 2(a) of the Rules Governing § 2254 Cases in the United States District Courts; *Bridges v. Chambers*, 425 F.3d 1048, 1049-50 (7th Cir. 2005).

assault of a victim under 13 years old. (*See, e.g.*, D.E. 12 at 1; D.E. 6, Ex. O at 1-2.[2]) All of the charges arose out of Proctor's repeated acts of sexual abuse of a family member over a five-year time period, beginning when the victim was an eight-year-old girl. (D.E. 6, Ex. D at 4.)[3]

On April 21, 1997, Petitioner was sentenced to sixty years of imprisonment by the Circuit Court of Cook County, Illinois. (D.E. 1 at 1.) In the change of plea proceedings, the trial judge admonished Proctor regarding the potential consequences of his guilty plea, including that Proctor "could be sentenced up to 120 years in the Department of Corrections" based on the age of the victim. (D.E. 6, Ex. R at 3-6; *see also id.*, Ex. O (opinion of Illinois Appellate Court) at 2.) Petitioner indicated that he understood and accepted this possibility. (*Id.*, Ex. R at 4.) The trial court also asked, "[d]o you understand there is no agreement here?" Proctor responded "yes." (D.E. 6, Ex. O at 2.) Proctor also stated that he had not been forced or threatened to plead guilty and that he had not been promised anything in return for his plea. (*Id.*) After the trial court determined that there was a factual basis for the plea and that it was knowing and voluntary, the court accepted Proctor's plea. (*Id.*)

At the sentencing hearing, "Petitioner testified that he gained a further knowledge of God while in prison, acknowledged his wrongdoing and apologized." (*Id.*) Proctor made two statements during the hearing, however, which evidenced discomfort with the sentence the State requested, and disapproval of the sentence that was ultimately imposed. (D.E. 6, Ex. Q at B-18, 24.) When the State expressed its position that Petitioner should be sentenced in excess of sixty

---

[2] As explained by the Illinois Court of Appeals, a medical examination of the victim reflected that the girl's injuries "were consistent with sexual abuse." (D.E. 6, Ex. O at 2.)

[3] Docket entries are designated as "D.E. ___," followed by the appropriate district court docket number.

years, Petitioner claimed, "I would have never pleaded if I had known that." (*Id.* at B-18.) When the trial court sentenced Petitioner to sixty years, Proctor stated (apparently to his attorney), "That ain't what you told me, man. I am just – file a motion, plead guilty – because that's bogus right there." (*Id.* at B-24.) Nonetheless, Proctor began serving his sentence in the Illinois Department of Corrections.

Petitioner appealed his convictions and sentence to the Illinois Appellate Court. (D.E. 1 at 2.) In the initial appeal, the State suggested error because defense counsel had failed to document compliance with Illinois Supreme Court Rule 604(d) in the proceedings below. (*Id.*) (Rule 604(d) requires defense counsel to file a certification with the trial court that counsel has discussed potential issues for appeal with the client, reviewed the trial court file and report of proceedings, and made any necessary amendments to the post-trial motions. (D.E. 12 at 2.)) The Appellate Court accepted the State's suggestion and remanded the case to the trial court. On remand, defense counsel filed the appropriate certification (D.E. 6, Ex. C at 6), and the trial court denied Petitioner's motion to reconsider his sentence. (*Id.*, Ex. E at 3.)

Petitioner appealed. Appellate counsel, an attorney from the Cook County Public Defender's Office, filed a motion pursuant to *Anders v. California*, 386 U.S. 738 (1967); the motion explained that defense counsel had reviewed the record and "determined that there are no issues upon which to base a meritorious appeal." (D.E. 6, Ex. E at 5 (capitalization omitted).) The motion also discussed issues that defense counsel had considered in the course of analyzing appellate issues. (*Id.*, Ex. E at 5-8.)[4] Proctor filed an objection to the *Anders* motion. (*Id.*, Ex.

---

[4] *Anders* instructed that an appellate advocate representing a criminal defendant must "support his client's appeal to the best of his ability." *Id.*, 386 U.S. at 744. *Anders* further instructed that, "[o]f course, if counsel finds his case to be wholly frivolous, after a conscientious

3

F.) In it, Proctor appeared to suggest that *Anders* itself might be unconstitutional,[5] and he also asserted that appellate counsel was ineffective (*id.*, Ex. F at 4), that the demands of *Anders* were not satisfied (*id.*, Ex. F at 3), that there was insufficient evidence to convict (*id.*, Ex. F at 4), and that he should have been allowed to withdraw his guilty plea. (*Id.*)

The Illinois Court of Appeals rejected Proctor's claim that appellate counsel had failed to comply with the mandates of *Anders*. (*Id.*, Ex. G at 2.) The Illinois Court of Appeals affirmed the judgment of the trial court, and it stated that, "[w]e have carefully reviewed the record in this case and aforesaid brief in compliance with the mandate of the *Anders* decision." (*Id.*) The Illinois Court of Appeals further explained that, after conducting such review, it could "find no issues of arguable merit." (*Id.*)

Petitioner then began state post-conviction proceedings. He signed his first post-conviction petition on May 23, 2000, and filed it with the clerk of the Circuit Court of Cook County on May 26, 2000. (*Id.*, Ex. D at 3-8; D.E. 12 at 3.) The petition alleged that Proctor's trial counsel was ineffective and that his guilty plea was not knowing and voluntary. (D.E. 6, Ex. D at 5-6; *id.*, Ex. O at 3.) Proctor also maintained that counsel had informed him that he would receive sex offender treatment in prison. (*Id.*, Ex. D at 5-6; *id.*, Ex. O at 3.) The petition was dismissed by the Circuit Court on July 21, 2000 on grounds of waiver and res judicata. (*Id.*, Ex.

---

examination of it, he should so advise the court and request permission to withdraw." *Id.* "That request . . . must be accompanied by a brief referring to anything that might arguably support an appeal." *Id.*

[5] In this regard, Petitioner stated, "[t]he Constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of it's client, as opposed to that of 'amicus curica' [sic] as was done in this case. The no-merit Brief and the procedure it triggers do not reach that dignity." (D.E. 6, Ex. F at 1.)

4

H at 3-6.) Petitioner appealed the dismissal of his post-conviction petition, and he was afforded counsel for his state post-conviction appeal pursuant to Illinois procedural law. (See id., Ex. H at 1 (discussing Illinois law).)

On appeal of the denial of post-conviction relief, appellate counsel ultimately sought leave to withdraw, explaining that counsel had "reviewed the trial record and concluded that there are no arguable bases for collateral relief." (Id., Ex. L at 1.) The Illinois Appellate Court affirmed the trial court's denial of post-conviction relief, and it stated that after "carefully review[ing] the record in this case," it agreed with appellate counsel that there were "no issues of arguable merit" concerning the circuit court's dismissal on res judicata and waiver grounds. (Id., Ex. L at 2.) The Illinois Appellate Court therefore affirmed the dismissal in an order dated June 21, 2002. (Id., Ex. L.)

More than four months later, on October 22, 2002, Petitioner attempted to file three late Petitions for Leave to Appeal ("PLAs") to the Illinois Supreme Court. (D.E. 16, Ex. A at A1-A3.) Two of the PLAs were from decisions of the Illinois Appellate Court in direct appeal proceedings.[6] The other PLA concerned the Illinois Appellate Court's affirmance of the dismissal of Petitioner's post-conviction petition (No. 1-01-2476). (Id., Exs. L & M.) The Illinois Supreme Court returned Petitioner's PLAs unfiled because they were untimely and instructed Petitioner to refile the PLAs along with motions for leave to file untimely PLAs. (D.E. 12 at 3; D.E. 16, Exs. B & C.) Petitioner did so in a letter dated November 12, 2002. (D.E. 12 at

---

[6] As previously stated, Case No. 97-2106 had remanded Petitioner's appeal to the trial court for compliance with Illinois Supreme Court Rule 604(d); Case No. 98-2623 involved Petitioner's affirmance of conviction and sentence on direct appeal, when the Illinois Appellate Court affirmed the trial court's denial of reconsideration of Petitioner's sentence and allowed appellate counsel to withdraw pursuant to Anders, supra. (See D.E. 6, Exs. A, G, M.)

5

3; D.E. 16, Ex. B.[7])

On January 30, 2003, the Supreme Court denied Petitioner's motions to file late PLAs from the two appellate decisions regarding his direct appeal proceedings (Nos. 97-2106 and 98-2623), but allowed the Petition to file a late PLA from the appellate decision affirming the circuit court's denial of his post-conviction petition. (D.E. 6, Ex. M at 4; D.E. 16, Exs. D & E.) Nonetheless, on April 2, 2003, the Illinois Supreme Court denied the Petition for Leave to Appeal regarding denial of Petitioner's first state post-conviction petition on res judicata and waiver grounds. (D.E. 6, Ex. M at 5.)

Proctor filed a second post-conviction petition in the Illinois courts on September 17, 2003. (D.E. 1 at 3a.) This petition was dismissed by the Circuit Court of Cook County on November 26, 2003. (D.E. 6, Ex. N at 8.) The Circuit Court reviewed the petition in a written opinion, and it found that the claims in the second post-conviction petition were variously barred by doctrines of res judicata and waiver—save for Petitioner's claim that he was denied effective assistance of counsel in the appeal from the denial of his first state post-conviction petition. (Id., Ex. N. at 5-7.) As to the issue of alleged inadequacy of appellate counsel on post-conviction review, the Circuit Court of Cook County noted that the Illinois Appellate Court agreed with appellate counsel's determination that there were no non-frivolous appellate issues in the course of affirming the trial court's denial of post-conviction relief. (Id., Ex. N at 7-8.) Overall, the trial

---

[7] Some of the documents attached to Petitioner's submissions suggest that his dating of the November 12, 2002 transmittal letter may be inaccurate, in that Petitioner may have made his submissions at a later date or dates. For example, some of the notarial dates on the filings attached to the November 12, 2002 letter are from November 14, 2002. (See, e.g., D.E. 16, Ex. B at 2-4.) Other documents Petitioner filed are dated by the notary on November 26, 2002. (See D.E. 16, Ex. C at 2.) The Court uses the November 12, 2002 date herein, which is the date most friendly to Petitioner for present purposes.

6

court denied the second state post-conviction petition in its entirety. (*Id.*)

Petitioner appealed, and the Illinois Appellate Court affirmed the Circuit Court's denial. (*Id.*, Ex. O at 8.) The Illinois Appellate Court affirmed application of res judicata and waiver principles within the context of Illinois post-conviction review, and it also undertook a cause and prejudice review, under which Petitioner was not entitled to relief. (*Id.*, Ex. O at 6-8.)

Petitioner filed a timely PLA to the Illinois Supreme Court, which was denied on December 1, 2005. (*Id.*, Ex. P at 2.) Petitioner filed a petition for a writ of certiorari to the Supreme Court of the United States. The U.S. Supreme Court denied that petition on May 1, 2006. *See Proctor v. Illinois*, __ U.S. __, 126 S. Ct. 1916 (2006).

On May 18, 2006, Petitioner filed the instant Petition for a writ of habeas corpus. (D.E. 1.) The Petition raises five claims: (1) the state trial court improperly dismissed Petitioner's second post-conviction petition; (2) Petitioner's plea was not voluntary; (3) the state trial court failed to comply with Illinois Supreme Court Rule 402(b); (4) trial counsel was ineffective for failing to challenge the guilty plea on remand; and (5) appellate counsel was ineffective. (D.E. 1 at 5-6e.) Presently before the Court is Respondent's motion to dismiss the Petition as time-barred, pursuant to 28 U.S.C. § 2244(d)(1)(A). (D.E. 12)

## II. Analysis

As explained at length below, Proctor's habeas petition does not merit relief under the law. The Petition is substantively meritless, in that the underlying rulings and judgments of the Illinois courts at issue rest on application of state law waiver and res judicata principles which are not the proper subject of federal habeas relief. *See, e.g., Coleman v. Thompson*, 501 U.S.

7

722, 729-30 (1991).[8] The Illinois courts also conducted a "cause and prejudice analysis," found that Proctor had made no such showing, and this analysis appears to be clearly correct. *See generally Williams v. Taylor*, 529 U.S. 362, 413 (2000).

As a threshold matter, however, the Petition is independently defective because it is untimely under federal standards set forth in The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 110 Stat. 1214 (1996), and precedent applying that statute. The Court states general federal habeas principles below—under which Petitioner's claims are barred or non-cognizable. The Court also relates applicable principles by which the Petition is untimely.

## A.    Standard of Review

The grounds upon which a federal district court may issue a writ of habeas corpus regarding a person imprisoned pursuant to a state court criminal judgment are subject to meaningful limits. First, habeas relief can be granted "only on the ground that [a prisoner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Accordingly, the Court cannot grant habeas relief on the grounds that a state court misapplied state law, except to the extent that such application also violated federal law. *See, e.g., Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002) ("Federal habeas relief is only available to a person in custody on violation of the United States Constitution or laws or treaties of the United States, . . . and is unavailable to remedy errors of state law.") (citation omitted).

---

[8] In the interests of completeness, the Court notes that Petitioner may also claim that the Illinois courts did not properly follow the specific procedures outlined in the Illinois Post-Conviction Act. This claim of underlying state law error is not cognizable on federal habeas, even if it were properly presented to the Illinois courts. *See, e.g., Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002) (citation omitted).

Second, this Court may not provide habeas relief unless Petitioner has exhausted all available remedies in state courts. *See, e.g., Kurzawa v. Jordan*, 146 F.3d 435, 440 (7th Cir. 1998) (instructing that a petitioner must exhaust "all available state remedies," and that if he does not, "the petition is barred") (internal quotation marks and citation omitted). Exhausting available state remedies includes fairly and properly presenting each claim on appeal to the Illinois appellate court and in a petition to the Illinois Supreme Court. *See, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 845-46 (1999); *Hadley v. Holmes*, 341 F.3d 661, 664 (7th Cir. 2003) (*per curiam*). This rule applies to claims presented in direct appeals from criminal courts, as well as to claims contained in petitions for state post-conviction relief. *See, e.g., White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999) (*per curiam*).

For the exhaustion doctrine "to prevent unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution, it is not sufficient merely that the federal habeas applicant has been through the state courts. [. . . .] Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004) (internal quotation marks and citation omitted). Thus, it is insufficient to merely state a federal claim in state court: instead, "the petitioner [must] afford the State a full and fair opportunity to address and resolve the claim on the merits." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). Full and fair presentment does not occur if the petitioner fails to follow the rules the state has established for the appeal process. *See generally Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (explaining that "a

9

prisoner must use all available avenues of review," and comparing exhaustion requirements for administrative remedies and criminal appeals).

Third, habeas relief is ordinarily not available for claims that have been "procedurally defaulted" in state proceedings. A claim may be procedurally defaulted because a state court has already determined that is barred under state procedural law. *See, e.g., Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). (This was the basis for the most, if not all, of the relevant rulings of the Illinois courts implicated by Proctor's Petition.) In addition, even when a state court has not issued a procedural ruling on the claim, a claim may be procedurally defaulted if the court reviewing the habeas petition determines that "the [state] court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.*, 501 U.S. at 735 n.1. The Court may excuse procedural default when there is cause for the default and prejudice as a result of the alleged violation of federal law or where a refusal to consider the claim would result in a fundamental miscarriage of justice. *See, e.g., Dellinger*, 301 F.3d at 767 (citation omitted). To show cause for a default, a petitioner must offer an "external" excuse—one that cannot fairly be attributed to him. *See, e.g., Harris v. McAdory*, 334 F.3d 665, 669 (7th Cir. 2003); *Henderson v. Cohn*, 919 F.2d 1270, 1272 (7th Cir. 1990) (collecting cases). In order to establish prejudice, a petitioner must demonstrate that the alleged constitutional violation establishes a reasonable likelihood "'that the result of the trial would have been different'" but for the violation. *Richardson v. Briley*, 401 F.3d 794, 801 (7th Cir. 2006) (quoting *Strickler v. Greene*, 527 U.S. 263, 289 (1999)); *id.* at 803 (similar).

In order to establish that a fundamental miscarriage of justice has occurred, Petitioner must demonstrate that "the constitutional violation has probably resulted in a conviction of one

10

who is actually innocent." *Dellinger*, 301 F.3d at 767 (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "To show 'actual innocence,' . . . [the petitioner] must present clear and convincing evidence that, but for the alleged error [*i.e.*, the alleged violation of federal law in the state court proceedings], no reasonable juror would have convicted him." *Dellinger*, 301 F.3d at 767 (citing *Schlup*, 513 U.S. at 327). An error that increases the punishment for a non-capital offense, such as a sentencing error, does not constitute a "fundamental miscarriage of justice." *See Hope v. United States*, 108 F.3d 119, 120 (7th Cir. 1997). Due to the prior finding of guilt by the factfinder, a petitioner alleging a fundamental miscarriage of justice bears the burden of proof. *See Buie v. McAdory*, 341 F.3d 623, 626-27 (7th Cir. 2003).

## B.    AEDPA Rules

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 110 Stat. 1214 (1996), placed additional restrictions on federal habeas relief for persons imprisoned pursuant to the judgment of a state court. Under AEDPA, the state court judgment must violate federal law and it must either be "contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or be "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A judgment is "contrary to" Supreme Court precedent if the state court made a statement of law inconsistent with one made by the Supreme Court, or if the state court decided a case with "materially indistinguishable facts" differently from the Court. *Huynh v. Bowen*, 374 F.3d 546, 548 (7th Cir. 2004) (citing *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). A state court decision is an "unreasonable application of" clearly established law "if the state court identifies the correct governing legal principle from the [Supreme] Court's decisions

11

but unreasonably applies that principle to the facts of the prisoner's case." *Id.*, 529 U.S. at 413.

Of particular threshold relevance in the instant case, AEDPA established a one-year statute of limitations for federal habeas petitions. 28 U.S.C. § 2244(d)(1). The limitation period runs from the latest of:

> (1) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (2) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (3) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA provides that the time during which a properly filed application for post-conviction relief is pending shall not be counted toward the one-year limitation period, *i.e.* the statute is tolled during this pendency. 28 U.S.C. § 2244(d)(2).

The Court will assume, as the Seventh Circuit previously has, that this one-year limitations period is at least potentially subject to equitable tolling. *See, e.g., Modrowski v. Mote,* 322 F.3d 965, 967 (7th Cir. 2003) (stating that "we once again reserve the question whether the filing deadline for § 2254 petitions is ever subject to equitable tolling"). Nonetheless, precedent reflects that the Seventh Circuit has repeatedly rejected equitable tolling claims in the § 2254 context, with the Seventh Circuit stating in *Modrowski,* for example, that "we have yet to identify a circumstance that justifies equitable tolling in the collateral relief context." *Id. Modrowski*

reflects the narrow nature of any putative equitable tolling doctrine, as it rejected an equitable tolling claim where the Seventh Circuit assumed *arguendo* that the petitioner's counsel was "actually incapacitated" through a variety of psychological and/or physical ailments and that such incapacity caused a petition to be untimely filed. *Id.* The Seventh Circuit cited to an extensive corpus of federal appellate precedent teaching that attorney negligence is no basis for equitable tolling. *See id.* at 967-68 (collecting cases). The Seventh Circuit further explained that the rationale behind that body of caselaw is that "attorney negligence is not extraordinary and clients, even if incarcerated, must vigilantly oversee, and ultimately bear responsibility for, their attorney's actions or failures," at least outside the capital context. *Id.* at 968 (collecting cases; internal quotation marks and citation omitted); *see also id.* ("We will not revisit our long-standing determination that petitioners bear ultimate responsibility for their filings . . . : petitioners, whether in prison or not, must vigilantly oversee the actions of their attorneys and, if necessary, take matters into their own hands.") (internal quotation marks and citation omitted).

The Court will address equitable tolling issues at greater length below, however, at a general level, it is clear that any putative relief under the equitable tolling doctrine is to be granted (if ever) under limited circumstances: "'Equitable tolling is granted sparingly' only when 'extraordinary circumstances far beyond the litigant's control . . . prevented timely filing.'" *Wilson v. Battles*, 302 F.3d 745, 749 (7th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.2000) (collecting cases)). It is appropriate only when "a petitioner could not, despite the exercise of reasonable diligence, have discovered all the information he needed in order to be able to file his claim on time." *Battles*, 302 F.3d at 748 (citation omitted).

## III. Discussion

Respondent argues that Proctor's Petition for a writ of habeas corpus is time-barred by the AEDPA statute of limitations. (D.E. 12.) Proctor's Petition is time-barred if the time that elapsed between Proctor's final conviction and the filing of the instant Petition—less the period of time during which valid applications for state post-conviction relief were pending—exceeds one year. 28 U.S.C. § 2244(d)(1)-(2). As explained below, it does exceed one year.

### A. Final Judgment Date

This Court must determine as an initial matter when Petitioner's conviction became final on direct appeal for AEDPA purposes. The Illinois Appellate Court affirmed Proctor's conviction and sentence on September 24, 1999. (D.E. 6, Ex. G.) Although Petitioner did not seek leave to appeal to the Illinois Supreme Court at that time, he is entitled to add the time during which he could have filed for leave to the limitations period. *See* 28 U.S.C. §2244(d). In Illinois, a party seeking leave to appeal from the Appellate Court must file the petition for leave in the Illinois Supreme Court within 35 days of the entry of judgment. Ill. Sup. Ct. R. 315(b).[9] Therefore, Petitioner's conviction became final, and the AEDPA one-year statute of limitations

___

[9] Respondent asserts that Illinois law allows only 21 days. *See* D.E. 12 at 6 (citing Ill. Sup. Ct. R. 315(b)). Petitioner agrees with this position. *See* D.E. 34 at 14-15 (also citing Ill. Sup. Ct. R. 315(b)). Notwithstanding the parties' agreement, the Court has reviewed Rule 315(b), and it appears to provide for 35 days. Any potential ambiguity about whether the Rule allows 21 days, as Respondent and Petitioner contend, or 35 days, as the Rule appears to reflect, is not material. The Court will use the 35 day date, which is more favorable to Petitioner, notwithstanding his stipulation to a less-favorable date (*see* D.E. 34 at 14-15), and under which date his Petition is untimely in any event.

began to run, on November 1, 1999.[10]

## B.    First Post-Conviction Petition

Petitioner sent his first petition for post-conviction relief to the Circuit Court of Cook County on May 23, 2000 (D.E. 6, Ex. D at 8), 205 days after his conviction became final.[11] On that date, the statute of limitations was tolled pursuant to 28 U.S.C. § 2244(d)(2), which tolls the statute of limitations so long as a properly filed post-conviction petition is pending in the state courts. The first post-conviction petition was dismissed with finality by the Appellate Court on June 21, 2002. (D.E. 6, Ex. L.)[12] Petitioner did not file timely PLAs after the dismissal, and he did not file the appropriate motion for leave to file untimely PLAs until November 12, 2002, 143 days later. The intervening period counts against the statute of limitations, as AEDPA only provides that the time during which a "properly filed" application for post-conviction relief is pending shall be exempted from the one-year limitation period. *See* 28 U.S.C. § 2244(d)(2);

---

[10]  Thirty-five days after September 24, 1999, not counting that day, was Saturday, October 30, 1999. The Court will therefore start the clock the next business day, on Monday, November 1, 1999.

[11]  There is an arguable conflict among Illinois appellate courts as to whether a *pro se* post-conviction petition is filed on the day it is mailed or on the day it is received by the court clerk. *Compare People v. Floyd*, 569 N.E.2d 245, 247 (Ill. App. Ct. 1991), *with People v. Saunders*, 633 N.E.2d 1340, 1342-43 (Ill. App. Ct. 1994). (The possibility of a conflict is potentially overstated: *Sanders* stated that it was consistent with *Floyd—see Sanders*, 633 N.E.2d at 1342—and it noted that the two decisions involved different statutory sections. *See id.* at 1342-43.) The Court need not explore this issue further, as it will resolve any arguable ambiguity in Petitioner's favor and therefore will use the earliest possible date, the day Petitioner signed his post-conviction petition, as the filing date.

[12]  In his response to the motion to dismiss, Petitioner appears to argue concerning the statute of limitations as it relates to the period of time from August 31, 2000, to February 7, 2001. (*See* D.E. 34 at 8, ¶ 1.) This period of time is not being counted in the instant case, and the Petition is nonetheless untimely under AEDPA.

15

*Brooks v. Walls*, 301 F.3d 839, 841 (7th Cir. 2002) (teaching that, "to be 'properly filed' an application for collateral review in state court must satisfy the state's timeliness requirements"). Since Petitioner did not timely file his PLAs, and did not file for appropriate leave for 143 days, these days count against the statute of limitations for his federal habeas filing. *See id.*; *Battles*, 302 F.3d at 748 (the limitations period is tolled only while petitioner's collateral attack is "pending," and does not extend to the time he could have, but did not, file an appeal from the denial of the collateral attack). Petitioner filed the motion to allow the late PLAs on November 12, 2002, and the Court will begin tolling of the AEDPA limitations period at that time. (Petitioner offers no authority to suggest that a simple motion to file an untimely PLA is sufficient to toll a statute that requires "a properly filed application for State post-conviction" review, however, the Court will assume *arguendo* in Petitioner's favor that AEDPA tolling is appropriate under such a circumstance.) The Court will continue tolling, therefore, again assuming *arguendo* in Petitioner's favor that it is appropriate, until April 2, 2003, when the Illinois Supreme Court denied Proctor's PLA. (D.E. 6, Ex. M at 5; *id.*, Ex. T at 2.)

## C.    Second Post-Conviction Petition

At a minimum, the AEDPA statute of limitations ran from April 2, 2003 until Proctor filed his second state court post-conviction petition on September 17, 2003 (D.E. 1 at 3a), 167 days later. The Court will, for present purposes, assume that the statute was tolled during the pendency of the second state court petition, and while Proctor sought review of the petition's denial from the U.S. Supreme Court. At a minimum, the statute began to run again on May 1, 2006, when the U.S. Supreme Court denied certiorari. (*Id.* at 4.) Petitioner dated the instant habeas corpus Petition on May 3, 2006, so an additional day is counted against the statutory

16

period between the conclusion of his second post-conviction proceedings and this filing.

## D. Total Time Elapsed Against AEDPA Statute of Limitations

In total, even resolving all possible inferences and ambiguities in Petitioner's favor, 516 non-tolled days elapsed between November 1, 1999 (the date of Proctor's final conviction for AEDPA purposes) and May 3, 2006 (the date of the instant habeas filing). This length of time substantially exceeds the one-year period during which Proctor's habeas corpus Petition could have been considered by this Court. Thus, the Petition is time-barred.

## E. Equitable Tolling

As explained above, the Seventh Circuit has reserved the question of whether equitable tolling has any place in the analysis of the timeliness of § 2254 petitions under AEDPA, given that AEDPA specifies that certain circumstances warrant tolling of the limitations period but does not include equitable tolling situations among those circumstances. *See, e.g., Modrowski v. Mote*, 322 F.3d 965, 967 (7th Cir. 2003) (stating that "we once again reserve the question whether the filing deadline for § 2254 petitions is ever subject to equitable tolling"); *see also Taliani v. Chrans*, 189 F.3d 597, 598 (7th Cir. 1999) ("Given this and other express tolling provisions (28 U.S.C. §§ 2244(d)(1)(B), (C), (2)), it is unclear what room remains for importing the judge-made doctrine of equitable tolling . . . ."). The Court will nonetheless assume that equitable tolling principles have some room for operation, as the Seventh Circuit has previously. *See, e.g., id.*

Even so, precedent makes quite clear that the scope of any equitable tolling doctrine in this area is circumscribed. *See Modrowski*, 322 F.3d at 967 (collecting numerous Seventh

17

Circuit cases in which equitable tolling claims were rejected, and stating "we have yet to identify a circumstance that justifies equitable tolling in the collateral relief context."); *accord, e.g., Poe v. United States*, 468 F.3d 473, 477 (7th Cir. 2006) ("[E]quitable tolling of the statute of limitations is such exceptional relief that we have yet to identify a circumstance that justifies equitable tolling in the collateral relief context") (collecting cases; internal quotation marks and citations omitted). In this regard, *Modrowski* itself rejected application of equitable tolling, notwithstanding that it assumed *arguendo* that the Petitioner's counsel was "actually incapacitated" through a variety of psychological and/or physical problems and that the attorney's incapacity caused the petition to be untimely. *Id.*

In his response to Attorney General's motion to dismiss, Petitioner alludes to the general concept of equitable tolling, but he makes no meaningful argument that could justify application of that concept here. For example, Petitioner complains that he was not provided with counsel for his second state post-conviction proceeding (*see* D.E. 34 at 17-18), but this is not a basis for equitable tolling. The Supreme Court has made clear that there is no right to counsel in any post-conviction proceedings. *See, e.g., Coleman*, 501 U.S. at 752.[13] Petitioner also states that he relied on putatively erroneous advice of another inmate. (*See* D.E. 34 at 17 ("[P]etitioner was informed that a second pc petition should be filed . . . [based on] another inmates advise [sic].").) This also is inadequate under precedent, which repeatedly teaches that even "a lawyer's mistake

---

[13] The Court notes that, notwithstanding that Petitioner had no constitutional right to counsel in any post-conviction setting, he *was* provided with counsel, pursuant to Illinois law, for his appeal from the denial of his first post-conviction petition. The appellate counsel withdrew after reviewing the record and concluding that there were no non-frivolous issues for appeal, an assessment in which the Illinois Appellate Court concurred. (D.E.6, Ex. L at 1.)

is not an extraordinary circumstance justifying application of equitable tolling." *Johnson v. McCaughtry*, 265 F.3d 559, 566 (7th Cir. 2001) (citation omitted); *accord, e.g., Modrowski*, 322 F.3d at 967-68 ("[W]e, and numerous other courts, have held that attorney negligence is *not* grounds for equitable tolling.") (collecting cases; emphasis in original). Because the Court finds no "[e]xtraordinary circumstances far beyond the litigant's control" as required for equitable tolling, equitable tolling is inappropriate. *Marcello*, 212 F.3d at 1010.

## IV. Proctor's Petition Would Afford No Basis for Habeas Relief Even if It Were Timely

Even if Proctor's Petition were timely, it still would afford no basis for relief. Before presenting a claim on federal habeas, a petitioner must exhaust "all available state remedies," and if he does not, "the petition is barred." *See, e.g., Kurzawa*, 146 F.3d at 440 (internal quotation marks and citation omitted). To exhaust available state remedies, the petitioner must fairly and properly present each claim on appeal to the Illinois appellate court and in a well-taken petition to the Illinois Supreme Court. *See, e.g., O'Sullivan*, 526 U.S. at 845-46; *Hadley*, 341 F.3d at 664. That rule applies to claims presented in direct appeals as well as to state post-conviction relief petitions. *See, e.g., White*, 192 F.3d at 608.

Petitioner did not properly exhaust state remedies with regard to any claim concerning his direct appeal, in which his conviction and sentence were affirmed by the Illinois Appellate Court after it concluded that there were "no issues of arguable merit" in Petitioner's favor. (D.E. 6, Ex. G at 2.) Nor did Petitioner properly exhaust state remedies concerning any issue with the prior iteration of his direct appeal, in which the Illinois Appellate Court accepted the State's representation that defense counsel had failed to document compliance with Illinois Supreme

19

Court Rule 604(d), which gap was filled before the direct appeal proceeded and Petitioner's conviction and sentence were affirmed. Petitioner failed to properly exhaust state remedies concerning any claims raised in connection with those two direct appeals because he thereafter did not properly present the issues to the Illinois Supreme Court via a timely PLA. Petitioner attempted to file untimely PLAs (*see id.*, Exs. A, G, M), but that attempt to file untimely PLAs was rejected by the Illinois Supreme Court. (*See* D.E. 16, Exs. D & E.) Unsuccessfully seeking leave to file procedurally improper and untimely PLAs does not constitute proper exhaustion of all available state remedies. Accordingly these claims are precluded from this Court's review.

Petitioner was granted leave by the Illinois Supreme Court to file an untimely PLA concerning the denial of his first state post-conviction petition, and the Illinois Supreme Court ultimately denied the PLA. (D.E. 6, Ex. M at 4-5.) The Court will assume that this suffices to constitute proper exhaustion of available state remedies. Nonetheless, Petitioner's first state post-conviction petition was rejected on state law grounds of res judicata and waiver (*id.*, Ex. H at 3-6), and that determination was affirmed on appeal after the Illinois Appellate Court concluded that there were "no issues of arguable merit" concerning the propriety of the trial court's dismissal. (*Id.*, Ex. L at 2.) Where a state court judgment rests on application of state law procedural rules, such as those concerning res judicata and waiver, putative underlying federal law claims are procedurally defaulted and are not cognizable on federal habeas review. *See, e.g., Coleman*, 501 U.S. at 729-30; *accord id.* at 735 n.1.

Petitioner filed a second state post-conviction petition, and all of the claims in that petition except one were again found to be variously procedurally barred under state law waiver

and res judicata concepts. (*See* D.E. 6, Ex. N at 6-8.)[14] The only claim that was not procedurally barred was Petitioner's claim that state post-conviction appellate counsel had been inadequate when the Cook County Public Defender's Office represented that it had "reviewed the trial record and concluded that there are no arguable bases for collateral relief." (*Id.*, Ex. L at 1.) This assessment was substantively adopted by the Illinois courts on multiple occasions, but for present purposes, the most important issue is that alleged inadequacy of counsel on state post-conviction review is not a basis for federal habeas relief in any event. *See, e.g., Coleman*, 501 U.S. 752 (dismissing federal habeas claim and stating that, "[t]here is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.") (collecting cases); *Pitsonbarger v. Gramley*, 141 F.3d 728, 737 (7th Cir. 1998) ("There is no right to effective counsel in post-conviction hearings.") (internal citations omitted).

Nor does Petitioner present any basis to conclude that he can make the requisite showings of cause and prejudice or of actual innocence. At his change of plea hearing, Petitioner was expressly advised of the possible consequences of a guilty plea, including that Proctor "could be sentenced up to 120 years in the Department of Corrections" based on the age of the victim of the sexual assaults. (D.E. 6, Ex. R at 3-6; *see also id.*, Ex. O at 2.[15]) Petitioner stated that he

_____

[14] Those determinations were affirmed on appeal, and the Illinois Supreme Court and U.S. Supreme Court both declined invitations to review the denial of the second state habeas petition. (D.E. 6, Ex. O; *id.*, Ex. P at 2; *Proctor v. Illinois*, __ U.S. __, 126 S. Ct. 1916 (2006).)

[15] It appears from the record that an enhanced sentence also may have been independently permissible because Petitioner has a prior sex offense felony. In this regard, the database of the Illinois Department of Corrections reflects that Petitioner was sentenced to three years imprisonment for taking indecent sexual liberties with a child in 1984. *See* http://www.idoc.state.il.us/subsections/search/default.asp (Illinois Department of Corrections

21

understood and accepted this possibility. (*Id.*, Ex. R at 4.) The trial court also told Proctor, "[d]o you understand there is no agreement here?" Proctor responded that he understood. (D.E. 6, Ex. O (opinion of Illinois Appellate Court) at 2.) Proctor further testified that he had not been forced or threatened to plead guilty and that he had not been promised anything in return for his plea. (*Id.*) Proctor acknowledged that he had committed a series of horrific sexual molestations and assaults of his victim, a girl of eight to thirteen years old during the assaults in question. (D.E. 6, Ex. R at 6-9.) This acknowledgment was consistent with other evidence in the case, including a medical examination of the victim, which reflected that the girl's injuries were consistent with sexual abuse, as well as the recovery of an object Petitioner used in the sexual assaults. (*See id.*, Ex. O at 2; *id.*, Ex. R at 8.) At the sentencing hearing, Petitioner admitted his wrongdoing again. (*Id.*)

This is not even colorably the stuff of an actual innocence claim. *See, e.g., Dellinger*, 301 F.3d at 767 (stating that to show that a fundamental miscarriage of justice is implicated, the petitioner must show that alleged errors of federal law "probably resulted in a conviction of one who is actually innocent") (citing *Schlup*, 513 U.S. at 327). Nor has Petitioner suggested any plausible cause and prejudice showing. *See, e.g., Richardson*, 401 F.3d at 801; *Henderson v. Cohn* 919 F.2d 1270, 1272 (7th Cir. 1990); *accord* D.E. 6, Ex. O at 7-8 (Illinois Appellate Court's rejection of any cause and prejudice issues on the record in this case).

There likely are other, independent facial legal defects with at least some of Petitioner's claims. For example, his claims often appear to be most fairly characterized as assertions of state

_____

prisoner database reflecting Proctor's imprisonment, starting in December 1984, in Case No. 84C1821).)

law error—such as his claim that the "trial judge abused its [sic] discretion in not complying fully with [Illinois] Supreme Court Rule 402(b), (c)." (D.E. 1 at 6 (capitalization omitted).) None of these additional questions needs to be explored further, however. Petitioner's habeas petition is untimely under AEDPA, and his claims are independently not the subject of cognizable federal habeas relief, for the reasons explained above.

## V.  Conclusion

Accordingly, for the reasons stated above, Respondent's motion to dismiss Petitioner's habeas corpus petition as time-barred (D.E. 12) is granted and the Petition is respectfully dismissed.   Were the Petition timely, and it is not, the Petition nonetheless would not afford a basis to grant federal habeas relief under the law.


Mark Filip
United States District Judge
Northern District of Illinois

Date: 1/31/07